FILED - GR
April 26, 2023 8:45 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: KB   SCANNED BY: JW / 4-26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DIESEL FREAK LLC,
ACCURATE TRUCK SERVICE, LLC,
GRIFFIN TRANSPORTATION, INC.,
RYAN LALONE,
WADE LALONE,
DOUGLAS LARSEN,
CRAIG SCHOLTEN,
RYAN BOS,
ROBERT SWAINSTON,
RANDY CLELLAND, a/k/a "Jeb,"
SCOTT DEKOCK, and
GLENN HOEZEE,

Defendants.
_____/

1:23-cr-48
Paul L. Maloney
U.S. District Judge

**FELONY INFORMATION**

The United States Attorney charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant herein:

1. The purpose of the Clean Air Act ("CAA") is, among other things, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1); *see* 42 U.S.C. § 7470 (setting forth the Congressional declaration of purpose). In enacting the CAA, Congress found that "the increasing use of motor vehicles[] has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2).

2. The CAA regulates "mobile sources," which include motor vehicle engines and off-road vehicles and engines. Mobile sources must comply with the CAA emission standards. Pursuant to 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder, the U.S. Environmental Protection Agency ("EPA") established standards limiting the emission of air pollutants from various classes of motor vehicle engines. Heavy-duty diesel engines ("HDDEs") are one such class and are subject to the emissions regulations found at 40 C.F.R. Part 86, Subpart A. 42 U.S.C. § 7521(a)(3).

3. To meet these emission standards, vehicle manufacturers design and install certain hardware devices as components of an emissions control system to manage and treat engine exhaust. This reduces the levels of pollutants such as nitrogen oxides, particulate matter, carbon monoxide, and non-methane hydrocarbons that are emitted into the air from tailpipe exhaust and keeps those emissions within regulatory limits. For diesel engines, such emissions control devices include diesel particulate filters ("DPF"), exhaust gas recirculation ("EGR") systems, diesel oxidation catalysts ("DOC"), and selective catalytic reduction ("SCR") systems. Together, these hardware emissions control devices make up a diesel vehicle's emissions control system and are critical to ensuring that the vehicle complies with the CAA's emissions standards.

4. Pursuant to 42 U.S.C. § 7521(m)(1), the EPA is authorized to create regulations requiring manufacturers to install on-board diagnostic ("OBD") systems on vehicles and engines to ensure that emissions control systems continue to operate properly. EPA has thus enacted regulations that require the installation of OBD systems on vehicles and engines. *See* 40 C.F.R. §§ 86.007-17, 86.010-18, and 86.1806-05. OBD systems must be "capable of monitoring all emission-related engine systems or components," including the EGR system, the DOC, the DPF, and the SCR system. 40 C.F.R. § 86.010-18(a).

5. Modern highway motor vehicles contain a network of control modules that control the powertrain system and components, which includes the emissions control system. The primary control module for powertrain and emissions is often referred to as the engine control module ("ECM") (sometimes referred to as the engine or electronic control unit "ECU"). The OBD is composed of software and sensors that monitor emissions-related engine systems and components for malfunctions that may increase emissions. Generally speaking, vehicle manufacturers integrate the OBD system into the calibration(s) stored on the ECM (i.e., the OBD is a subsystem of the calibration(s) stored on the ECM). Collectively, all calibrations (including the OBD system), operating software, and firmware on the ECM may be referred to as "software." If an emissions-related malfunction or problem occurs, the OBD system causes a malfunction indicator light ("MIL") to be illuminated on the vehicle's dashboard to alert the driver and a diagnostic trouble code ("DTC") to be stored in the OBD's memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system. Removal, disconnection, or malfunction of certain powertrain components, including emissions control hardware, may cause the control system to limit the top speed of some vehicles to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs and to prevent damage to other components.

6. OBD systems are monitoring devices or methods required to be maintained or followed under the CAA to ensure that both the emissions-monitoring computer software and the hardware emissions control devices of heavy-duty vehicles are functioning properly. *See* 40 C.F.R. §§ 86.010-18(a) and 86.1806-5(a)(1).

7. Persons seeking to evade the CAA's pollution controls for heavy-duty diesel vehicles have developed methods of modifying or removing emissions control systems and rendering the OBDs inaccurate. These modifications may be undertaken to avoid repair and maintenance costs associated with emissions controls and to improve the horsepower, torque, fuel efficiency, or other characteristics of diesel engines. These unlawful modifications result in a dramatic increase in multiple pollutants being emitted by each vehicle.

8. One method of disabling a manufacturer-installed emissions control system is to remove the portion of the vehicle's exhaust system that contains some of the emissions control equipment, such as the DOC and SCR catalyst, and replace it with a section of hollow exhaust tubing sometimes referred to as a "straight pipe." These replacement pipes do not contain emissions control hardware.

9. Alternatively, the DPF is hollowed out by removing the operational internal contents (e.g., catalyst substrate), and then is reconnected to the exhaust pipe. This gives the appearance that the components are still intact but eliminates their effective function. The EGR can be disabled through the installation of "block plates" that cover the EGR valve and prevent the recirculation of exhaust. Additionally, certain functions of emissions control components can be electronically disabled.

10. To prevent an OBD system from detecting that the emissions controls have been modified or removed, the ECM is reprogrammed to disable at least some of the OBD monitoring functions and to modify other engine calibration parameters related to the operation of emissions controls (e.g., turning off diesel exhaust fluid ("DEF") injection, turning off DPF regenerations, and remapping other parameters to account for the removed or disabled emissions controls). If an ECM is not reprogrammed after modification or removal of emissions control equipment, a

properly functioning OBD will detect the malfunction or removal of the emissions control equipment, trigger a MIL alert, store a DTC and, in certain instances, cause the vehicle to go into limp mode.

11. Tampering with or removing the software or hardware of emissions components is sometimes referred to as "deletion," that is, "deleting" the emissions control components and monitoring devices from the vehicle. Reprogramming the ECM, including the OBD system, as part of the emissions control deletion can be referred to as "tuning" or "reflashing" the vehicle.

12. DIESEL FREAK LLC is a company headquartered in Gaylord, Michigan. DIESEL FREAK LLC conducted remote reprogramming, or tuning, of OBDs, including deletions, in the Western District of Michigan and elsewhere. RYAN LALONE owns and operates DIESEL FREAK LLC. WADE LALONE, Dustin Rhine, and James Sisson, a/k/a "Jes," were employed as programmers at DIESEL FREAK LLC.

13. ACCURATE TRUCK SERVICE, LLC, headquartered in Grand Rapids, Michigan, is a mechanical shop that provided services, including deletions, for heavy-duty and other vehicles, and is owned and operated by CRAIG SCHOLTEN, RYAN BOS, and DOUGLAS LARSEN. ACCURATE TRUCK SERVICE, LLC's service manager is ROBERT SWAINSTON and its head mechanic during the relevant time period was RANDY CLELLAND, a/k/a "Jeb."

14. GRIFFIN TRANSPORTATION, INC., is a company that shares a premises with, and is associated with, ACCURATE TRUCK SERVICE, LLC, and is owned and operated by CRAIG SCHOLTEN and RYAN BOS. GRIFFIN TRANSPORTATION, INC., is a shipping company that owns, leases, or operates a fleet of semi-truck tractors.

15. SCOTT DEKOCK, during the relevant time period, owned and operated a shipping company in Grand Rapids, Michigan. GLENN HOEZEE was the head mechanic at the company during the relevant time period.

## COUNT 1
(Conspiracy to Violate the Clean Air Act)

The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 15 of the Introductory Allegations of this Information.

Between approximately 2012 and at least November 2018, in Kent County, in the Western District of Michigan, Southern Division, and elsewhere, the defendants,

> DIESEL FREAK LLC,
> ACCURATE TRUCK SERVICE, LLC,
> GRIFFIN TRANSPORTATION, INC.,
> RYAN LALONE,
> WADE LALONE,
> DOUGLAS LARSEN,
> CRAIG SCHOLTEN, and
> RYAN BOS,

knowingly and voluntarily combined, conspired, confederated, and agreed with each other and with Robert Swainston, Randy Clelland, a/k/a "Jeb," Scott DeKock, Glenn Hoezee, Dustin Rhine, and James Sisson, a/k/a "Jes," and with other persons known and unknown, to knowingly falsify, tamper with, and render inaccurate monitoring devices and methods required to be maintained and followed under Title 42, United States Code, Chapter 85, in violation of Title 42, United States Code, Section 7413(c)(2)(C).

### Objects of the Conspiracy

1. An object of the conspiracy was to falsify, tamper with, render inaccurate, delete, modify, and remove software and hardware components from the emissions monitoring systems in HDDEs and vehicles, for the purposes of increasing real or perceived performance and fuel efficiency of the vehicles, and of reducing or eliminating the cost and burden associated with maintaining the vehicles.

2. Another object of the conspiracy was to generate income for one or more defendants by charging customers a fee to delete the emissions control systems in their vehicles.

3. Another object of the conspiracy was to conceal from EPA and others that the emissions control components were being removed from or modified in the vehicles.

### Manner and Means

4. Company 1, headquartered in Italy, developed software used in connection with the deletion of emissions control components, and distributed that software to other members of the conspiracy. Company 1 likewise developed and distributed tools and equipment used to access the engine computer.

5. Company 2, headquartered in Ohio, is the North American distributor for Company 1. Company 2 sold and distributed Company 1's equipment, tools, and software, including for the purpose of conducting deletions of emissions control components.

6. Companies 1 and 2 designated their downstream customers, who further distributed and implemented the deletions, as "masters" and "slaves." "Masters" were programmers that used the software to reprogram the engine computer for a truck at the shop of a "slave." The "slaves" completed the hardware component of the deletion and connected the engine computer to the internet, including by using "slave tools" that allowed the computer to be connected to the internet. "Masters" were encouraged by Companies 1 and 2 to recruit "slaves." Companies 1 and 2 provided training and support to their downstream customers to help them successfully delete vehicles with HDDEs.

7. In addition to Companies 1 and 2, other companies and individuals are known to develop and distribute software and other tools and materials for use in deletions, and in fact assisted the conspirators in conducting deletions during the conspiracy.

8. DIESEL FREAK LLC was a "master" with dozens of "slaves" in the United States, including ACCURATE TRUCK SERVICE, LLC. DIESEL FREAK LLC used Company 1's software and tools to remotely perform the software component of deletions.

9. ACCURATE TRUCK SERVICE, LLC, conducted deletions by removing the hardware components of vehicles with HDDEs, and DIESEL FREAK LLC provided remote reprogramming services for those deletions. DIESEL FREAK LLC and ACCURATE TRUCK SERVICE, LLC, used code words like "ECM wiring" on invoices to conceal the fact that the work performed was a deletion.

10. GRIFFIN TRANSPORTATION, INC., owned, leased, or operated vehicles with HDDEs that it caused to be deleted. ACCURATE TRUCK SERVICE, LLC, and DIESEL FREAK LLC deleted those vehicles.

11. The company formerly owned by DeKock owned, leased, or operated vehicles with HDDEs that it caused to be deleted. ACCURATE TRUCK SERVICE, LLC, and DIESEL FREAK LLC assisted in those deletions.

### Overt Acts

In furtherance of the conspiracy, the following overt acts, among others, were committed in the Western District of Michigan and elsewhere:

12. From at least February 2015 to at least November 2018, DIESEL FREAK LLC, RYAN LALONE, and WADE LALONE, among others, deleted, or aided and abetted the deletion of, at least 362 vehicles.

13. From at least July 2016 to at least November 2018, ACCURATE TRUCK SERVICE, LLC, deleted, or aided and abetted the deletion of, at least 83 vehicles. DIESEL FREAK LLC provided the engine reprogramming involved in the deletion of most of these

vehicles. DOUGLAS LARSEN, CRAIG SCHOLTEN, and RYAN BOS, among others, supervised, authorized, and directed these deletions.

14. From at least July 2016 to at least November 2018, GRIFFIN TRANSPORTATION, INC., and its related companies, including ACCURATE TRUCK SERVICE, LLC, owned, leased, or operated at least 12 deleted vehicles that they caused to be deleted. ACCURATE TRUCK SERVICE, LLC, and DIESEL FREAK LLC deleted these vehicles. CRAIG SCHOLTEN and RYAN BOS, among others, supervised, authorized, and directed these deletions.

15. From at least August 2017 to at least November 2018, Scott DeKock deleted, or aided and abetted in the deletion of, at least 4 vehicles owned, leased, or operated by the company he then owned. ACCURATE TRUCK SERVICE, LLC, and DIESEL FREAK LLC performed the deletion of these vehicles at the direction of DeKock.

18 U.S.C. § 371

## COUNTS 2–3
(Violation of the Clean Air Act)

The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 15 of the Introductory Allegations of this Information.

On or about the dates below, in Kent County, in the Western District of Michigan, Southern Division, and elsewhere, the defendants,

ROBERT SWAINSTON,
RANDY CLELLAND, a/k/a "Jeb,"
SCOTT DEKOCK, and
GLENN HOEZEE,

knowingly falsified, tampered with, and rendered inaccurate, or aided and abetted such falsification, tampering, and rendering inaccurate, a monitoring device required to be maintained and followed under Title 42, United States Code, Chapter 85, namely the OBD or ECM of the HDDE specified below.

| Count | Defendant(s) | Date range | Vehicle | VIN |
|---|---|---|---|---|
| 2 | SWAINSTON and CLELLAND | October 29, 2018, to November 2, 2018 | 2011 Freightliner, 2010 14.8-liter Detroit Diesel engine | 1FUJGLDR8BSAZ2553 |
| 3 | DEKOCK and HOEZEE | August 14, 2017, to November 2, 2018 | 2013 Kenworth, 2012 15-liter Cummins ISX engine | 1XKAD49XXDJ355780 |

42 U.S.C. § 7413(c)(2)(C)
18 U.S.C. § 2

Dated: 4/25/23

MARK A. TOTTEN
United States Attorney

JUSTIN M. PRESANT
Assistant United States Attorney