UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

No. 1:23-cr-

v.

HON.
United States District Judge

ACCURATE TRUCK SERVICE, LLC, and
GRIFFIN TRANSPORTATION, INC.,

    Defendants.
_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Accurate Truck Service, LLC, Griffin Transportation, Inc., and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

    1.    <u>Plea to an Information.</u>    The defendants agree to plead guilty to Count 1 of an Information. Count 1 of the Information charges the defendants with conspiracy to violate the Clean Air Act in violation of Title 18, United States Code, Section 371. The defendants waive their right to indictment by a grand jury.

    2.    <u>The Defendants Understand the Crime.</u>    In order for the defendants to be guilty of violating Title 18, United States Code, Section 371, the following must be true:

        a.    First, two or more persons conspired, or agreed, to commit the crime of falsifying, tampering with, or rending inaccurate monitoring devices and methods, in violation of the Clean Air Act, Title 42, United States Code, Section 7413.

        b.    Second, the defendants knowingly and voluntarily joined the conspiracy.

c. Third, a member of the conspiracy did at least one of the overt acts described in the Information for the purpose of advancing or helping the conspiracy.

The defendants are pleading guilty because each defendant is guilty of the charge described above.

3. <u>The Defendants Understand the Penalties.</u> The statutory maximum sentence that the Court can impose on each defendant for a violation of Title 18, United States Code, Section 371, is the following:

   a. not less than one and not more than five years of probation;

   b. a fine of not more than $500,000, or twice the pecuniary gain from the offense, or twice the pecuniary loss to a person other than the defendant, whichever is greater; and

   c. a $400 mandatory special assessment.

The defendants agree to pay the special assessments at or before the time of sentencing unless the defendants affirmatively demonstrate to the Court that they lack the ability to pay.

4. <u>Financial Disclosure Statement and Cooperation in Continuing Financial Investigation.</u>

   a. The defendants agree to cooperate fully in the identification of funds and assets in which they have any legal or equitable interest to be applied toward the fines and the prompt payment thereof as set forth below in Paragraph 8. The defendants also agree that the full fine amounts shall be considered due and payable immediately, or on such payment schedule as the Court orders. The defendants understand that if the Court imposes a schedule of

payments, that schedule is merely the defendants' minimum obligation and neither the only method, nor a limitation on the remedies, available to the United States to enforce the judgments.

        b.      The defendants' cooperation obligations include: (A) preserving and depositing $300,000 into their law firm's client trust account and providing proof thereof; (B) paying its criminal monetary penalties in full on the date of sentencing or according to the payment schedule ordered by the Court; (C) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the United States, within ten days of the change of plea hearing and providing it to both the U.S. Attorney's Office and the U.S. Probation Office; (D) providing any documentation within their possession or control requested by the United States regarding the defendants' and related entities' financial condition; and (E) agreeing to provide and/or consent to the release of the defendants' tax returns for the previous seven years.  Should the defendants default upon their obligations to pay fines as set forth in this plea agreement, the defendants' cooperation obligations include: (F) submitting to a financial deposition or interview (should the United States deem it necessary) prior to sentencing regarding the subject matter of said form (including making their financial advisor or accountant available for said financial deposition or interview); and (G) fully and truthfully answering all questions regarding their past and present financial condition and that of related entities in such interview(s).

        c.      The defendants agree that, should they default upon their obligations to pay fines as set forth in this plea agreement, the defendants will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $10,000 before sentencing, without

the prior approval of the United States, excluding the payment of attorneys' fees incurred in connection with this criminal case.

   d.  The defendants authorize the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office, and to share any information collected pursuant to this agreement with the U.S. Probation Office or the Court.

   e.  So long as the defendants are completely truthful, the United States agrees that any information disclosed by either defendant during a financial interview or deposition or in the financial forms described above cannot and will not be used against it in the United States' criminal prosecution. The defendants and the U.S. Attorney's Office agree that information provided by the defendants with respect to criminal fines will be used to collect assets to satisfy the defendants' fines, but it will not be used to otherwise enhance the defendants' sentences, in accordance with United States Sentencing Guidelines ("Guidelines") § 1B1.8. However, it is expressly understood that such information may be used by the United States at sentencing to seek enhancement of the defendants' sentences if the United States learns of information about the defendants' assets that is contradicted by the information provided by the defendants in accordance with the defendants' obligations under this paragraph.

   f.  Further, the United States is completely free to pursue any and all investigative leads derived in any way from the interview(s)/deposition(s)/financial forms, which could result in the acquisition of evidence which, should the defendants default upon their obligations to pay fines as set forth in this plea agreement, would be admissible against the defendants in subsequent proceedings. If either defendant subsequently takes a position in any legal proceeding that is inconsistent with the interview(s)/deposition(s)/financial forms—whether

in pleadings, oral argument, witness testimony, documentary evidence, questioning of witnesses, or any other manner—the United States may use the defendants' interview(s)/deposition(s)/financial forms, and all evidence obtained directly or indirectly therefrom, in any responsive pleading and argument and for cross-examination, impeachment, or rebuttal evidence. Further, the United States may also use the defendants' interview(s)/deposition(s)/financial forms to respond to arguments made or issues raised sua sponte by the Court.

       g.    The defendants agree that failure to comply with any of the provisions in subparagraphs a through f above constitutes a material breach of the plea agreement.

5.    <u>Factual Basis of Guilt.</u>    The defendants and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendants' guilt:

       a.    Between at least July 2016 and at least November 2018, Accurate Truck Service, LLC, Griffin Transportation, Inc., Craig Scholten, Ryan Bos, Douglas Larsen, Robert Swainston, and Randy Clelland conspired with others, including but not limited to Diesel Freak LLC, Ryan Lalone, Wade Lalone, Jess Sisson, Dustin Rhine, Scott DeKock, and Glenn Hoezee, to violate the Clean Air Act. The conspirators violated the Clean Air Act by falsifying, tampering with, rendering inaccurate, deleting, modifying, and removing software and hardware components from the emissions monitoring systems in heavy-duty diesel engines ("HDDEs") and vehicles that were required under the Clean Air Act.

    b.  Tampering with or removing the software or hardware of emissions components is sometimes referred to as "deletion," that is, "deleting" the emissions control components and monitoring devices from the vehicle. Reprogramming the on-board diagnostic ("OBD") system and/or engine control module ("ECM") as part of the emissions control deletion can be referred to as "tuning" the vehicle. These modifications may be undertaken for the purposes of increasing real or perceived performance and fuel efficiency of the vehicles, and of reducing or eliminating the cost and burden associated with maintaining the vehicles.

    c.  The defendants understand that: Diesel Freak LLC is a company headquartered in Gaylord, Michigan. Diesel Freak LLC conducted remote engine reprogramming, or tuning of OBDs, including deletions, in the Western District of Michigan and elsewhere, including for Accurate Truck Service, LLC, and Griffin Transportation, Inc. Ryan Lalone owns and operates Diesel Freak LLC. Wade Lalone, Jess Sisson, and Dustin Rhine were employed as programmers at Diesel Freak LLC.

    d.  Accurate Truck Service, LLC, headquartered in Grand Rapids, Michigan, is a mechanical shop that provided services, including deletions, for trucks with HDDEs and other vehicles. The company is owned by Craig Scholten, Ryan Bos, and Douglas Larsen. Larsen is primarily responsible for day-to-day operations of the company. Accurate Truck Service, LLC's service manager is Robert Swainston and its head mechanic during the relevant time period was Randy Clelland, a/k/a "Jeb." All of these defendants—Larsen, Scholten, Bos, Swainston, and Clelland—were personally involved in certain decisions to delete emissions control components from vehicles carrying HDDEs as a part of the conspiracy.

6

e. Griffin Transportation, Inc., is a company that shares a premises with, and is associated with, Accurate Truck Service, LLC, and is owned by Craig Scholten and Ryan Bos. Bos is primarily responsible for day-to-day operations of the company. Griffin Transportation, Inc., is a shipping company that owned, leased, or operated vehicles containing HDDEs that it caused to be deleted. Accurate Truck Service, LLC, and Diesel Freak LLC deleted those vehicles.

f. From at least July 2016 to at least November 2018, Accurate Truck Service, LLC, deleted, or aided and abetted the deletion of, at least 83 vehicles. Diesel Freak LLC provided the engine reprogramming involved in the deletion of most of these vehicles.

g. From at least July 2016 to at least November 2018, Griffin Transportation, Inc., and its related companies, including Accurate Truck Service, LLC, owned, leased, or operated at least 12 deleted vehicles. Accurate Truck Service, LLC, and Diesel Freak LLC deleted these vehicles.

h. The deletions included a 2011 Freightliner, 2010 14.8-liter Detroit Diesel engine, VIN 1FUJGLDR8BSAZ2553, and a 2013 Kenworth, 2012 15-liter Cummins ISX engine, VIN 1XKAD49XXDJ355780.

i. The conspirators concealed from the government and others that they were engaged in the illegal removal of emissions control components. For example, Accurate Truck Service, LLC, would use code words on invoices, like "ECM wiring," to conceal the fact that the work performed was a deletion.

6. <u>Non-Prosecution Agreement.</u> The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against the defendants or

against related companies River City Equipment Sales, Inc., and River City Equipment Leasing, LLC, in the Western District of Michigan arising out of the defendants' and the related companies' violations of the Clean Air Act between 2012 and 2022, provided that the conduct is disclosed to the government by the defendants or their attorneys prior to the date of this agreement. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

7. <u>The Sentencing Guidelines.</u>  The defendants understand that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendants. The defendants understand that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendants understand that the defendants and the defendants' attorneys will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendants further understand that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement. The defendants further understand that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the pleas.

8. <u>The Parties Jointly Agree to the Following.</u>  The defendants and the U.S. Attorney's Office agree and stipulate to a fine in the amount of $500,000 for each defendant, for a total fine for the defendants in the amount of $1,000,000, and further that such criminal fines

are reasonable.  The parties further agree that the fines are due and payable immediately or on such payment schedule as the Court orders, as stated above.

      a.      Within ten days of entry of this plea agreement, the defendants will deposit $50,000 into their law firm's client trust account and provide notice to the United States of the deposit.  Within forty-five days of entry of this plea agreement, the defendants will deposit an additional $250,000 into their law firm's client trust account and provide notice to the United States of the deposit.  The defendants and counsel agree that the funds will remain undisturbed in the trust account until remitted to the Clerk of Court on the day of sentencing.  The defendants understand that failure to pay at least $300,000 on the day of sentencing will be considered a breach of this agreement.

      b.      The defendants and the U.S. Attorney's Office each reserve the right to argue about the applicability of any provisions of the Guidelines other than those related to these stipulations regarding the amounts of the fines.  The defendants understand that neither the U.S. Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Both the defendants and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the U.S. Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence.  The defendants understand that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, the defendants cannot, for that reason alone, withdraw their guilty pleas.

9.  <u>Waiver of Constitutional Rights.</u>   By pleading guilty, the defendants give up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of the defendants' guilty pleas, there will be no trial.  At any trial, whether by jury or by the Court, the defendants would have each had the following rights:

   a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

   b. The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

   c. The right to confront and cross-examine witnesses against the defendant.

   d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

   e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

   f. By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

10. <u>Waiver of Other Rights.</u>

   a. <u>FOIA Requests.</u>   The defendants hereby waive all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including

without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

        b.    <u>Hyde Waiver.</u>  The defendants acknowledge, by their voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and the defendants hereby disclaim and waive any right to make any claim for attorneys' fees.

    11.    <u>The Court is Not a Party to this Agreement.</u>    The defendants understand that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  The defendants further understand that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendants cannot, for that reason, withdraw their guilty pleas, and they will remain bound to fulfill all of their obligations under this agreement.  The defendants understand that no one—not the prosecutor, the defendants' attorneys, or the Court—can make a binding prediction or promise regarding the sentences the defendants will receive, except that they will be within the statutory maximum.

    12.    <u>This Agreement is Limited to the Parties.</u>    This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority.  This agreement applies only to crimes committed by the defendants.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

13. <u>Consequences of Breach.</u>    If the defendants breach any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendants would otherwise be entitled under the terms of this agreement.   In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.   In such an event, the defendants shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.   The defendants further agree to waive and forever give up their right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

14. <u>This is the Complete Agreement.</u>    This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.   No other promises have been made, nor may any additional agreements,

understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

                                              MARK A. TOTTEN
                                              United States Attorney

4/24/23
Date

                                              JUSTIN M. PRESANT
                                              Assistant United States Attorney

    I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

3/15/2023
Date

                                              CRAIG SCHOLTEN, Member, on behalf of
                                              ACCURATE TRUCK SERVICE, LLC, and
                                              President, on behalf of
                                              GRIFFIN TRANSPORTATION, INC.
                                              Defendants

    I am Accurate Truck Service, LLC, and Griffin Transportation, Inc.'s attorney. I have carefully discussed every part of this agreement with my clients. Further, I have fully advised my clients of their rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my clients' decision to enter into this agreement is an informed and voluntary one.

3/15/23
Date

                                              MATTHEW L. VICARI
                                              Attorney for Defendants